# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

JERONE YOUNG,            :

     Plaintiff,          :

vs.                  :       CIVIL ACTION NO. 1:17-cv-24-TFM-MU

CITY OF MOBILE, *et al.*,     :

     Defendants.      :

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants City of Mobile's (the "City"), Mayor William Sandy Stimpson's ("Stimpson"), Chief of the Mobile Police Department James Barber's ("Barber"), and Lieutenant Rodney Greeley's ("Greeley") (collectively, the "City Defendants") *Motion for Summary Judgment and Incorporated Memorandum of Law* ("Motion for Summary Judgment") (Doc. 49, filed Aug. 29, 2018). The motion has been fully briefed (Docs. 49, 61, & 65) and is ripe for review. Having considered the motion and relevant law, the Court finds the Motion for Summary Judgment is due to be **GRANTED**.

Also pending before the Court is Plaintiff Jerone Young's ("Plaintiff" or "Young") *Affidavit Motion for Leave of Court to File This Affidavit* (Doc. 60, filed November 14, 2018)[1] and *Affidavit Number 2 Motion for Leave of Court to File This Affidavit* (collectively, the "Motions for Leave to File Affidavits") (Doc. 62, filed November 30, 2018), and the City Defendants' *Motion to Strike Portions of Plaintiff Jerone Young's "Affidavit Number 2"* ("Motion to Strike") (Doc. 66, filed January 28, 2018). Having considered the motions and relevant law, the Court finds the Motions for Leave to File Affidavits should be **GRANTED**, and the Motion to Strike should be

---

[1] Plaintiff's Affidavit Motion for Leave of Court to File This Affidavit (Doc. 60) was not filed as a motion, but the Court will construe Plaintiff's filing as a motion for leave to file his affidavit.

**GRANTED IN PART AND DENIED IN PART**.

## I.   JURISDICTION

The district court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 (federal question); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e; 42 U.S.C. § 1983; and 28 U.S.C. § 1367 (supplemental jurisdiction).

The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both.

## II.   PROCEDURAL AND FACTUAL BACKGROUND

### A.   Procedural Background

Plaintiff filed his original *pro se* Complaint in this Court on January 13, 2017, in which he brought claims against the City for employment discrimination pursuant to Title VII of the Civil Rights Act of 1964. (Doc. 1). Plaintiff's Motion to Proceed Without Prepayment of Fees (Doc. 3, filed Jan. 20, 2017) as amended (Doc 4, filed February 10, 2017) was granted by the Court on February 13, 2017 (Doc. 5). The City filed on March 9, 2017, its Motion to Dismiss or, in the Alternative, Motion for More Definite Statement and Incorporated Memorandum of Law ("the City's first motion to dismiss") pursuant to Fed. R. Civ. P. 12(b)(6) and (e). (Doc. 9).

On March 13, 2017, an attorney entered a notice of appearance on behalf of Plaintiff (Doc. 12) and filed an Amended Complaint as a matter of course pursuant to Fed. R. Civ. P. 15(a)(1) (Doc. 15), which rendered moot the City's first motion to dismiss (Doc. 16). Plaintiff's Amended Complaint brought claims against the City Defendants[2] for violations of Fourteenth Amendment procedural due process, First Amendment free speech and right to petition, Title VII, 42 U.S.C. §

---

[2] Plaintiff also brought claims against Lieutenant Stephanie Smith (Doc. 15), who the Court dismissed without prejudice pursuant to Fed. R. Civ. P. 4(m) for Plaintiff's failure to serve her. (Doc. 70).

1981, state law due process, and for breach of contract and negligence. (Doc. 15). On April 4, 2017, the City filed its Motion to Dismiss Count VII of Plaintiff's Complaint ("the City's second motion to dismiss") pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 17), and on the same day, filed its Answer to Amended Complaint (Doc. 18), which did not include its response to Count 7 of Plaintiff's Amended Complaint since the City's second motion to dismiss solely addressed Count 7. The Court denied the City's second motion to dismiss (Doc. 28) after the parties briefed their arguments (Docs. 22 & 23). The City filed its Answer to Count 7 of Plaintiff's Amended Complaint (Doc. 29) on May 16, 2017, and the remaining City Defendants filed their answers (Docs. 30-32) on May 19, 2017.

After the Court entered its Scheduling Order (Doc. 34), it granted a motion to withdraw that was filed by Plaintiff's counsel (Docs. 38 & 39). After a status conference, the Court suspended the deadlines in the Scheduling Order to afford Plaintiff the opportunity to retain alternate counsel by November 7, 2017 (Doc. 43). Plaintiff failed to retain alternate counsel by the prescribed date, so the Court held another status conference and again extended the time in which Plaintiff could retain alternate counsel (Doc. 45). Plaintiff still failed to retain alternate counsel, so the Court entered new deadlines (Docs. 45-46).

On August 29, 2018, the City Defendants filed their instant Motion for Summary Judgment (Doc. 49) to which Plaintiff filed his response (Doc. 61) and the City Defendants filed their reply (Doc. 65). The motion is fully briefed and ripe for review.

## B.    Factual Background

Plaintiff, an African-American male, was hired in August 2000 by the City as a "Maintenance Mechanic" (Doc. 15, ¶¶ 9 & 15). As a Maintenance Mechanic, Plaintiff was responsible for various groundskeeping activities that included trimming trees, bushes, and hedges; cultivating and weeding flower beds; and trimming the grass. (*Id.*, ¶ 16). After a six-month

working test period, Plaintiff became a permanent classified services employee with the City and was assigned to the Mobile Police Department ("MPD") at its headquarters building. (*Id.*, ¶ 15). Plaintiff's responsibilities at the MPD headquarters included general building maintenance (*Id.*, ¶ 16). Specifically, Plaintiff maintained machinery such as boilers, air conditioners, and heating facilities; plumbing fixtures; carpentry; and electrical units. (*Id.*).

In July 2008, Plaintiff applied for and received the position of Building Maintenance Supervisor. (*Id.*, ¶¶ 17-18). By August 2009, Plaintiff completed a one-year probationary placement for the position, which became permanent. (*Id.*, ¶¶ 18-19). As Building Maintenance Supervisor, in addition to his general building maintenance responsibilities, Plaintiff was given supervisory responsibilities over two Maintenance Mechanics, contracted-for janitorial services, Public Service workers, and court-ordered community service workers. Plaintiff also retained maintenance responsibilities for the facilities' machinery and equipment. (*Id.*, ¶ 20).

On November 27, 2013, Plaintiff filed his first lawsuit in this Court, in which he alleged racial discrimination, among other claims for relief, against the City, the Mayor of the City, the former Mayor of the City, and the former Police Chief of the City ("Young I lawsuit"). *Young v. City of Mobile*, No. 1:13-cv-00586-KD-B (S.D. Ala. Nov. 27, 2013). Plaintiff filed his complaint after the Mobile County Personnel Board (the "MCPB") reversed the decision to demote Plaintiff (Doc. 15, ¶ 25) because of the MCPB's "inability or unwillingness to address Plaintiff's racial discrimination charges" (*Id.*, ¶ 26). This Court granted summary judgment pursuant to Fed. R. Civ. P. 56 in favor of Defendants and against Plaintiff. *Young I*, Docs. 110 & 111. After Plaintiff's Motion to Alter, Amend or Vacate pursuant to Fed. R. Civ. P. 59(e) was denied by this Court, Plaintiff appealed its decision, which was dismissed for lack of jurisdiction. *Id.* at Docs. 112, 117, 118, & 126.

Between October 2015 and March 2016, Defendant Greeley was the Commander of the

Property Unit for the MPD and Plaintiff's direct supervisor. Defendant Greeley was succeeded by Christopher Levy as the Commander of the Property Unit and held that position until July 2017. Following the decision of the appeals court, Plaintiff maintained his position as Building Maintenance Supervisor; however, while his official duties were not modified, his duties would vary based on the needs of the department. (Doc. 49-1, ¶ 4; Doc. 49-2, ¶ 4). For example, Defendant Greeley stated, during his tenure, the community service detail was moved to a different department and was no longer administered by the Property Unit, which occurred around April 2015. (Doc. 49-1, ¶ 4; Doc. 15, ¶ 33). Mr. Levy stated, during his tenure, he handled some of Plaintiff's duties because Plaintiff failed to perform them. (Doc. 49-2, ¶ 4). Both Defendant Greeley and Mr. Levy stated they were not aware of Plaintiff's previous lawsuit for racial discrimination. (Doc. 49-1, ¶ 5; Doc. 49-2, ¶ 5).

### III.    STANDARD OF REVIEW

A party in a lawsuit may move a court to enter summary judgment before trial. FED. R. CIV. P. 56(a) and (b). Summary judgment is appropriate when the moving party establishes there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *see also Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) ("Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); *see also Ritchey v. S. Nuclear Operating Co., Inc.*, 423 F. App'x 955 (11th Cir.) (quoting *Anderson*)[3]. At

---

[3] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2 (effective Dec. 1, 2014); *see also Henry v. Comm'r*

the summary judgment juncture, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. Only disputes about the material facts will preclude the granting of summary judgment. *Id.*

The movant bears the initial burden of proof. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2552. A party must support its assertion that there is no genuine issue of material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). The admissibility of evidence is subject to the same standards and rules that govern admissibility of evidence at trial. *Clemons v. Dougherty County*, 684 F.2d 1365, 1369 n.5 (11th Cir. 1982) (citing *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir. 1980)).

Once the movant meets its burden under Fed. R. Civ. P. 56, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). "A genuine issue of material fact exists when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Moore ex rel. Moore v. Reese*, 637 F.3d 1220, 1232 (11th Cir. 2011) (quoting *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510). The court must view the facts and draw all reasonable inferences in favor of the nonmoving

---

*of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

party. *Id.* (citing *Rosario v. Am. Corrective Counseling Servs, Inc.*, 506 F.3d 1039, 1043 (11th Cir. 2007)); *Greenberg*, 498 F.3d at 1265 ("We view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion."). However, to avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S. Ct. at 1356 (citations omitted). Conclusory assertions, unsupported by specific facts, presented in affidavits opposing the motion for summary judgment are likewise insufficient to defeat a proper motion for summary judgment. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). "Speculation does not create a *genuine* issue of fact." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (citation omitted) (emphasis in original). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *See Anderson*, 477 U.S. at 249-50, 106 S. Ct. at 2511 (citations omitted). In short, summary judgment is proper after adequate time for discovery and upon motion against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case. *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

## IV.    DISCUSSION AND ANALYSIS

The City Defendants move the Court for summary judgment on all eight (8) claims that are brought by Plaintiff: violation of Fourteenth Amendment due process pursuant to 42 U.S.C. § 1983; violation of the First Amendment right to free speech pursuant to 42 U.S.C. § 1983; violation of the First Amendment right to petition pursuant to 42 U.S.C. § 1983; violation of Title VII, 42 U.S.C. § 2000e-3; violation of 42 U.S.C. § 1981; violation of due process under the Constitution of Alabama of 1901; breach of contract; and negligence.

The Court will address the claims in turn after it addresses Plaintiff's Motions for Leave to File Affidavits and the City Defendants' Motion to Strike.

A.    **Motions for Leave to File Affidavits and Motion to Strike**

In Plaintiff's Motions for Leave to File Affidavits (Docs. 60 & 62) he requests the Court's leave to file his affidavits (Doc. 60, at 1-14; Doc. 62, ¶¶ 1-4) and attachments in support (Doc. 60, at 16-42) to oppose the City Defendants' Motion for Summary Judgment (Doc. 49).  A response in opposition to Plaintiff's motions was not filed.[4]  Therefore, Plaintiff's Motions for Leave to File Affidavits (Doc. 60 & 62) are **GRANTED** and the Court will take under submission Plaintiff's affidavits (Doc. 60, at 1-14; Doc. 62, ¶¶ 1-4) and attachments in support (Doc. 60, at 16-42) to oppose the City Defendants' Motion for Summary Judgment (Doc. 49).

In the City Defendants' Motion to Strike,[5] they argue certain parts of Plaintiff's second affidavit should be struck because they contain statements that are not factually supported.  "An affidavit or declaration used to support or oppose a motion[ for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  FED. R. CIV. P. 56(c)(4).  "If a party fails to properly support an assertion of fact . . . as required by Rule 56(c), the court may . . . issue any other appropriate order."  FED. R. CIV. P. 56(e)(4).  The City Defendants argue the Eleventh Circuit has consistently struck affidavit statements that were conclusory and speculative.  *See, e.g., Evans v. Books-A-Million*, 762 F.3d 1288, 1295 (11th Cir. 2014) (upholding the district court's

---

[4] While the City Defendants filed their Motion to Strike to oppose certain statements in "Affidavit Number 2," they did not oppose the filing of the affidavits.

[5] The Court notes for the parties' future reference that, due to the 2010 amendments to Fed. R. Civ. P. 56, a motion to strike exhibits that are attached to a motion for summary judgment is no longer necessary.  *See* FED. R. CIV. P. 56, (2010 advisory committee notes) ("Subdivision (c)(2) provides that a party may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.  The objection functions much as an objection at trial, adjusted for the pretrial setting.  The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated.  There is no need to make a separate motion to strike.")

decision to strike affidavit statements that were conclusory and speculative because the affidavit statements "did not provide specific, supporting facts regarding, for example, the amount of other employees' salaries compared to hers, the details of other employees' financial advancement, or Mr. Dickson's job performance, duties and evaluations").

The City Defendants challenge the following statements from Plaintiff's second affidavit:

1. I hereby confirm verify via this Affidavit Number 2 that each of these duties were taken away without due process of law or hearing and were designed to inflict harm on me, both physically and psychologically, which I also confirm – and was executed by the Defendants in retaliation for me having attempted to vindicate my rights guaranteed by the 1st and 14th Amendments to the United States Constitution, Alabama Constitution, and various laws. (Doc. 62, ¶ 3).

2. Based on my understanding, the merit system act that created the Mobile County Personnel Board (MCPB) is tantamount to a contract that also includes guarantees secured by law that cannot be seized or taken away without due process of law. (Doc. 62, ¶ 3).

3. There are procedures that mandate and dictate without discretion what an Appointing Authority shall do prior to demotion, suspension, or termination. These procedures carry the force and effect of law. Once granted, they cannot be taken away without due process of law. Therefore, the State procedure as mandated therein, when violated does implicate the 14th Amendment as the denial of a State procedure would give rise to a due process violation as well. (Doc. 62, ¶ 3).

4. This list contained in that paragraph is an accurate representation and outline of the changes in my duties. I saw other employees take notice. It was humiliating and demeaning. It caused me great emotional harm. I suffered changes in my health and wellbeing. (Doc. 62, ¶ 3).

5. While employed at Police Headquarters, I have observed a far larger percentage of African-American employees dismissed, suspended, or demoted than Whites. Based on information and belief, the prior five-year period will fully expose such discrimination based on race. (Doc. 62, ¶ 4).

The paragraphs that are referenced above as paragraphs 1, 2, and 3 are phrased as legal conclusions, and therefore, should be struck. However, the Court finds the paragraphs that are referenced above as paragraphs 4 and 5 are not conclusory because they are statements based on Plaintiff's personal knowledge, and while paragraph 5 may be hyperbolic, the City Defendants may offer evidence to rebut the statement. Accordingly, the Court **GRANTS** the City Defendants'

Motion to Strike (Doc. 66) as to the statements in paragraphs 1, 2, and 3, and **DENIES** the City

Defendants' Motion to Strike (Doc. 66) as to the statements in paragraphs 4 and 5.

**B.    Plaintiff's Claims**

The Court now turns to the request for summary judgment on Plaintiff's claims.

**1.    (Count 1) Violation of Fourteenth Amendment Due Process Pursuant to 42 U.S.C § 1983**

In Plaintiff's Count 1, he claims his Fourteenth Amendment due process rights were

violated when his supervisory duties were reassigned.  (Doc. 15, ¶ 56).  The Due Process Clause

of the Fourteenth Amendment states, "nor shall any State deprive any person of life, liberty, or

property, without due process of law."  U.S. CONST. amend. XIV, § 1.  "The Supreme Court's

interpretation of this clause explicates that the amendment provides two different kinds of

constitutional protection: procedural due process and substantive due process." *McKinney v. Pate*,

20 F.3d 1550 (11th Cir. 1994) (citing *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S. Ct. 975, 983,

108 L. Ed. 2d 100 (1990)).  "A violation of either of these kinds of protection may form the basis

for a suit under [§] 1983." *Id.* (citing *Zinermon*, 494 U.S. at 125, 110 S. Ct. at 983).

> [R]emaining largely outside the scope of substantive due process jurisprudence are tort law, *see Daniels*[ *v. Williams*], 474 U.S.[ 327,] 332, 106 S. Ct.[ 662,] 665[, 88 L. Ed. 2d 662 (1986))], and public employment law, *see, e.g., Bishop v. Wood*, 426 U.S. 341, 350, 96 S. Ct. 2074, 2080, 38 L. Ed. 2d 684 (1976), *and Board of Regents v. Roth*, 408 U.S. 564, 577-78, 92 S. Ct. 2701, 2709-10, 33 L. Ed. 2d 548 (1972).
>
> In short, areas in which substantive rights are created only by state law (as is the case with tort law and employment law) are not subject to substantive due process protection under the Due Process Clause because "substantive due process rights are created only by the Constitution." *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 229, 106 S. Ct. 507, 515, 88 L. Ed. 2d 523 (1985) (Powell, J., concurring).  As a result, these state law based rights constitutionally may be rescinded so long as the elements of procedural-not substantive-due process are observed.

*McKinney*, 20 F.3d at 1556.

"Whether an individual complains that a state lacks constitutionally adequate procedures

for termination of employees or asserts that his particular hearing was not fair and impartial, he

has raised only procedural due process concerns." *Id.* at 1559.

In this case, Plaintiff states when he became a classified services employee and was tenured in his position, he obtained a property right in his position as Building Maintenance Supervisor, a right that included the duties associated with the position. (Doc. 15, ¶ 56). The City Defendants argue Plaintiff cannot show he was divested of a property interest, because his supervisors did not, in fact, divest Plaintiff of any of his job duties and Plaintiff does not have a property interest in specific job duties. (Doc. 49, at 6).

> "Due process" cases typically focus on whether governments can take away property without affording its owner an adequate notice and opportunity to be heard. *See, e.g., Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314-16, 70 S. Ct. 652, 657-58, 94 L. Ed. 865 (1950). When courts analyze a procedural due process claim . . . they variously examine three things: (1) whether there is enough of a property interest at stake to be deemed "protectable"; (2) the amount of process that should be due for that protectable right; and (3) the process actually provided, be it before or after the deprivation.

*Greenbriar Village, L.L.C. v. Mountain Brook*, 345 F.3d 1258, 1264 (11th Cir. 2003) (per curiam).

As to whether Plaintiff had a property interest in his job duties, the Supreme Court has recognized "property interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 571-72, 92 S. Ct. 2701, 2706, 33 L. Ed. 2d 548 (1972). "Property interests . . . are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.*

Rule 4.1 of the Rules and Regulations of the Personnel Board for Mobile, County, Alabama ("MCPB Rules") states, "The Director shall at all times maintain a Classification Plan, which shall consist of a statement or schedule of each class of positions in the Classified Service, separately

stated as to each Appointing Authority;[6] and shall maintain a statement of the specifications covering each class of positions."  RULES AND REGULATIONS OF THE PERSONNEL BOARD FOR MOBILE COUNTY, ALABAMA, Rule 4.1 (2006); (Doc. 49. at 26).  The MCPB Rules further state:

> The specifications shall be descriptive only and not restrictive.  They are intended to indicate the basis on which positions are allocated to the several classes as determined by their duties and responsibilities, and shall not be construed as declaring to any extent, or in any way, what the duties or responsibilities of any position shall be, or as limiting or in any way modifying the power of an Appointing Authority to assign duties to, and to direct and control the work of employees under his supervision.

RULES AND REGULATIONS OF THE PERSONNEL BOARD FOR MOBILE COUNTY, ALABAMA, Rule 4.2.

Plaintiff cites to MCPB Rule 14.3(a) for the proposition that said Rule creates a "property interest in continued employment for permanent classified employees that may not be denied or diminished without granting certain substantive and procedural due process rights."  (Doc. 15, ¶ 49).  MCPB Rule 14.3 states, "Before any permanent employee is dismissed, suspended or demoted for cause, the Appointing Authority or his designated representative shall afford the employee due process in the form of a pre-disciplinary hearing." RULES AND REGULATIONS OF THE PERSONNEL BOARD FOR MOBILE COUNTY, ALABAMA, Rule 14.3.  Although Plaintiff's supervisors stated Plaintiff was not dismissed, suspended, or demoted (Doc. 49-1, ¶ 4; Doc. 49-2, ¶ 4), Plaintiff argues "[i]f you take away one responsibility after another and remove essentially all supervisory duties, then most certainly a demotion has occurred."  (Doc. 61, at 7).

However, the MCPB Rules indicate job duties are not guaranteed, *see* RULES AND

---

[6] Appointing Authority is defined as:

> [A] person, officer, board, commission or other body or person whose lawful jurisdiction or powers are confined wholly or primarily within the territorial limits of Mobile County, or any incorporated city or town therein and who or which have the power to make appointments to offices or positions of employment or trust in any of the Classified Service as define in the Act.

REGULATIONS OF THE PERSONNEL BOARD FOR MOBILE COUNTY, ALABAMA, Rule 4.2, and Plaintiff has not cited to a persuasive independent source to support his argument that he had a property interest in his job duties. Therefore, Plaintiff's Fourteenth Amendment due process claim fails.

2. **(Counts 2 and 3) Violation of the First Amendment Right to Free Speech Pursuant to 42 U.S.C. § 1983 and Violation of the First Amendment Right to Petition Pursuant to 42 U.S.C. § 1983**

In Counts 2 and 3, Plaintiff claims the City Defendants violated his First Amendment rights when they retaliated against him by reducing his job duties because of his *Young I* lawsuit, specifically his supervisory duties. (*See* Doc. 15, ¶¶ 33, 63, & 73).

> A public employee must prove the following elements by a preponderance of the evidence to maintain a claim of First Amendment retaliation:
>
> > (1) the employee's speech is on a matter of public concern; (2) the employee's First Amendment interest in engaging in the speech outweighs the employer's interest in prohibiting the speech to promote the efficiency of the public services it performs through its employees; and (3) the employee's speech played a "substantial part" in the employer's decision to demote or discharge the employee.
>
> *Battle v. Bd. of Regents*, 468 F.3d 755, 759-60 (11th Cir. 2006) (per curiam). "The first two elements are questions of law designed to determine whether the First Amendment protects the employee's speech." *Id.*

*Akins v. Fulton County*, 278 F. App'x 964, 970 (11th Cir. 2008) [hereinafter *Akins II*] (per curiam).[7]

The City Defendants argue Plaintiff cannot show his protected speech and petition addressed a matter of public concern. (Doc. 49, at 8). Here, Plaintiff's protected speech and petition was his *Young I* lawsuit, in which he brought a claim of racial discrimination against the City, the Mayor of the City, the former Mayor of the City, and the former Police Chief of the City.

> For speech to be protected as speech on a matter of public concern, "it must relate to a matter of political, social, or other concern to the community." *Watkins v.*

---

[7] "[T]he 'public concern' requirement applies to First Amendment right to petition claims." *Grigley v. City of Atlanta*, 136 F.3d 752, 753 (11th Cir. 1998), *cert. denied* 525 U.S. 819, 119 S. Ct. 59, 60, 142 L. Ed. 2d 47 (1998).

> *Bowden*, 105 F.3d 1344, 1353 (11th Cir. 1997).  If the speech at issue is personal
> in nature, and "cannot be fairly considered as relating to any matter of political,
> social, or other concern to the community, government officials should enjoy wide
> latitude in managing their offices, without intrusive oversight by the judiciary in
> the name of the First Amendment." *Connick v. Myers*, 461 U.S. 138, 146, 103 S.
> Ct. 1684, 1690, 75 L. Ed. 2d 708 (1983). . . . It is well understood that "[a]n
> employee's speech will rarely be entirely private or entirely public." *Morgan v.
> Ford*. 6 F.3d 750, 755 (11th Cir. 1993)).  We take into account the content, form,
> and context of the speech to glean its "main thrust." *Id.* at 574 (citations omitted).
> If the "main thrust" of a public employee's speech is on a matter of public concern,
> then the speech is protected. *Id.* at 754-55.

*Akins v. Fulton County*, 420 F.3d 1293, 1303-04 (11th Cir. 2005) [hereinafter *Akins I*]; *but see also*

*Garcetti v. Ceballos*, 547 U.S. 410, 423, 126 S. Ct. 1951, 1961, 164 L. Ed. 2d 689 (2006) ("When

an employee speaks as a citizen addressing a matter of public concern, the First Amendment

requires a delicate balancing of the competing interests surrounding the speech and its

consequences.  When, however, the employee is simply performing his or her job duties, there is

no warrant for a similar degree of scrutiny.").[8]

The City Defendants do not argue and, based on the facts of the case, it does not appear

Plaintiff was performing his job duties when he performed his protected speech and petition.  The

facts of this case can be compared to those in *Morgan v. Ford*, 6 F.3d 750 (11th Cir. 1993) (per

curiam).  In *Morgan*, the plaintiff, a correctional officer at the Augusta Correctional Medical

Institute ("ACMI"), served as a witness for a colleague who had pursued a sexual harassment

complaint against Morgan's immediate supervisor (John Ford).  The plaintiff told the

Superintendent of ACMI of Ford's harassing behavior toward her; pressed charges against Ford

---

[8]     The Court's holding in *Garcetti* directly impacts the second element of a public
employee's First Amendment retaliation claim.  So long as a public employee
speaks during the course of performing her job duties, her First Amendment
interests will always be outweighed by her employer's interest in prohibiting the
speech, and her claim must fail as a matter of law.

*Akins II*, 278 F. App'x at 970.

with the Georgia Department of Corrections Internal Affairs Division; and filed a sexual harassment charge against Ford with the Georgia Office of Fair Employment Practices. *Id.* at 752-53. The court of appeals sustained the district court's entry of summary judgment against Morgan on her § 1983 First Amendment claim and found "the main thrust of her speech took the form of a private employee grievance." *Id.* at 755.

Similarly, the main thrust of Plaintiff's claim of racial discrimination takes the form of a private employee grievance as it relates to his § 1983 First Amendment claims. While Plaintiff's prior complaint of racial discrimination is a matter of important social interest, "the mere fact that the topic of the employee's speech was one in which the public might or would have had a great interest is of little moment." *Kurtz*, 855 F.2d at 727 (quoting *Terrell v. Univ. of Tex. Sys. Police*, 792 F.2d 1360, 1362 (5th Cir. 1986), *cert. denied*, 479 U.S. 1064, 107 S. Ct. 948, 93 L. Ed. 2d 997 (1987)). Plaintiff did not relate his concerns about racial discrimination to the public and "in no way dr[ew] the public at large or its concerns into the picture." *Pearson v. Macon Bibb Cty. Hosp. Auth.*, 952 F.2d 1274, 1279 (11th Cir. 1992); *cf. Martinez v. City of Opa-Locka*, 971 F.2d 708, 710 (11th Cir. 1992) (providing testimony regarding the public disposition of money); *Stough v. Gallagher*, 967 F.2d 1523, 1524, 1528 (11th Cir. 1992) (campaigning publicly for sheriff candidate); *Stewart v. Baldwin Cty. Bd. of Educ.*, 908 F.2d 1499, 1506 (11th Cir. 1990) (expressing opposition to tax referendum at Superintendent's meeting); *Williams v. Roberts*, 904 F.2d 634, 638 (11th Cir. 1990) (publishing criticism of budget proposal). Therefore, Plaintiff's protected speech and petition cannot be considered of public concern, and his due process claims fail.

Additionally, the City Defendants argue Plaintiff cannot show they retaliated against them, and in support of their argument, they attach the affidavits of Plaintiff's immediate supervisors, Defendant Greeley and Mr. Levy, both of whom stated Plaintiff maintained his position as Building Maintenance Supervisor. (Doc. 49, at 9).

"To be considered an adverse employment action in a First Amendment retaliation case, the complained-of action must involve an important condition of employment." *Stavropoulos v. Firestone*, 361 F.3d 610, 619 (11th Cir. 2004), *cert. denied*, 544 U.S. 976, 125 S. Ct. 1850, 161 L. Ed. 2d 727 (2005). A public employee states a case for retaliation when the alleged employment action would likely chill the exercise of constitutionally protected speech. *See id.* at 618. We have decided that, as a matter of law, important conditions of employment include discharges, demotions, refusals to hire or promote, and reprimands. *Id.* (citing *Goffer v. Marbury*, 956 F.2d 1045, 1049 n.1 (11th Cir. 1992)). In addition, any other conduct that "alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee" qualifies as an adverse employment action. *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000) (quotation and citation omitted). Thus, if an employer's conduct negatively affects an employee's salary, title, position, or job duties, that conduct constitutes an adverse employment action. *See Stavropoulos*, 361 F.3d at 620.

*Akins I*, 420 F.3d at 1300 (11th Cir. 2005). The Court of Appeals for the Eleventh Circuit interpreted its opinion in *Akins* to hold "unwarranted reprimands, a negative work evaluation, threat of job loss through dissolution of the plaintiff's division, threat of suspension without pay, removal of job duties, and exclusion from meetings did not constitute adverse employment actions, either singly or when considered in the aggregate." *Worley v. City of Lilburn*, 408 F. App'x 248, 252 (11th Cir. 2011).

Here, Plaintiff's supervisory duties were removed, but he maintained his same position and pay. Therefore, based on the Eleventh Circuit's description of an adverse employment action, the Court finds Plaintiff did not suffer an adverse employment action, he cannot establish his prima facie case, and his claims in Count 2 and 3 fail for these reasons.

3.    **(Counts 4 and 5) Violation of Title VII, 42 U.S.C. § 2000e-3, and 42 U.S.C. § 1981**

In Plaintiff's Counts 4 and 5, he claims his rights pursuant to Title VII and 42 U.S.C. § 1981 were violated when the City Defendants, excluding Stimpson and the City, retaliated against him by reducing his job duties because of his Young I lawsuit, specifically his supervisory duties. (Doc. 15, ¶¶ 73, 74, 76, & 77). Title VII and § 1981 "have the same requirements of proof and

use the same analytical framework," *Standard v. A.B.E.L., Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998), and "retaliation against an employee who engages in statutorily protected activity is barred under both Title VII and § 1981," *Chapter 7 Trustee v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1257-58 (11th Cir. 2012) (citations omitted). Therefore, the Court will address Counts 4 and 5 together.

"Title VII prohibits not only discrimination, but retaliation against an employee because she 'has opposed any practice made an unlawful employment practice by Title VII.'" *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1211 (11th Cir. 2013) (quoting *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008)). "The burden of proof in Title VII retaliation cases is governed by the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 668 (1973)." *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1162-63 (11th Cir. 1993). In order to prevail, Plaintiff must establish a prima facie case by showing "(1) [he] engaged in statutorily protected activity; (2) [he] suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the adverse action." *Dixon v. The Hallmark Cos., Inc.*, 627 F.3d 849, 856 (11th Cir. 2010) (citations omitted). These elements create a presumption that the adverse action was intended as retaliation. *Bryant v. Jones*, 575 F.3d 1281, 1307 (11th Cir. 2009). The burden of production then shifts to the defendant to rebut the presumption by articulating a legitimate non-discriminatory reason for the adverse action. *Id.* "After the defendant makes this showing, the plaintiff has a full and fair opportunity to demonstrate that the defendant's proffered reason was merely a pretext to mask discriminatory actions." *Brown*, 597 F.3d at 1181-82 (quoting *Bryant*, 575 F.3d at 1307-08).

The Court turns to Plaintiff's prima facie case. As to the first element,[9] neither party seems

---

[9] Title VII recognizes two forms of statutorily protected conduct. An employee is protected from retaliation if (1) "he has opposed any practice made an unlawful employment practice by this

to dispute Plaintiff engaged in a statutorily protected activity under Title VII when he complained to the Equal Employment Opportunity Commission and sued for discrimination. Therefore, for purposes of this analysis, Plaintiff has established the first element of his prima facie case.

As to the second element, the City Defendants argue Plaintiff cannot establish his prima facie case because he cannot show a materially adverse action. (Doc. 49, at 11). A materially adverse action "means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415, 165 L. Ed. 2d 345 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.D.C. 2006)). The Supreme Court explained its standard as follows:

> We refer to reactions of a *reasonable* employee because we believe that the provision's standard for judging harm must be objective. An objective standard is judicially administrable. It avoids the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings. . . .
>
> We phrase the standard in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters. "The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Oncale*[ *v. Sundowner Offshore Servs., Inc.*], [523 U.S. 75,] 81-82, 118 S. Ct. 998[, 140 L. Ed. 2d 201 (1998)]. A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children. *Cf., e.g.*, *Washington*[ *v. Ill. Dept. of Revenue*], 420 F.3d[ 658,] 662[ (7th Cir. 2005)] (finding flex-time schedule critical to employee with disabled child). A supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight. But to retaliate by excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination. *See* 2 EEOC 1998 Manual § 8, p. 8-14.

*Burlington*, 548 U.S. at 68-69, 126 S. Ct. at 2415-16. The Supreme Court clarified, "[T]he standard is tied to the challenged retaliatory act, not the underlying conduct that forms the basis of the Title

---

subchapter" or (2) "he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

VII complaint." *Id.* at 69, 126 S. Ct. at 2416. The standard for a materially adverse action under *Burlington* is "decidedly more relaxed" and "accords an employee protection from a wider range of retaliatory conduct" than the previous standard of "a serious and material change in the terms, conditions, or privileges of employment" under *Stavropoulos* and *Gupta*.[10] *Crawford*, 529 F.3d at 970-71, 973-74.

Plaintiff claims he was effectively demoted when his supervisory duties were removed, and it was "demeaning and humiliating." (Doc. 15, ¶¶ 37 & 73). The City Defendants argue Plaintiff did not suffer a materially adverse action because he retained his same position and pay. (Doc. 49, at 11). The Court assumes, for purposes of this analysis, Plaintiff suffered a materially adverse action and has established the second element of his prima facie case.

As to the third element, the City Defendants argue Plaintiff cannot establish his prima facie case because he cannot establish a causal link between the protected expression and the materially adverse action. (Doc. 49, at 11). "The burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (citing *Brungart v. BellSouth Telecomm., Inc.*, 231 F.3d 791, 798-99 (11th Cir. 2000)). However, mere temporal proximity, without more, must be "very close" and a three- to four-month disparity between the statutorily protected expression and the adverse employment action is not enough. *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S. Ct. 1508, 1511, 149 L. Ed. 2d 509 (2001) (citations omitted). Additionally, "temporal proximity alone is insufficient to create a genuine issue of fact as to causal

---

[10] "[T]he *Burlington* Court effectively rejected the standards applied by [the Court of Appeals for the Eleventh Circuit] in both *Stavropoulos* and *Gupta* that required an employee to show either an ultimate employment decision or substantial employment action to establish an adverse employment action for the purpose of a Title VII retaliation claim." *Crawford*, 529 F.3d at 973-74.

connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct." *Brungart*, 231 F.3d at 799 (citing *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1355-56 (11th Cir. 1999)).

Plaintiff's supervisory duties were removed approximately one (1) month after the conclusion of his Young I lawsuit, which the Court determines was within a close temporal proximity to his alleged adverse employment action. In rebuttal, the City Defendants argue Plaintiff cannot establish his supervisors knew of his Young I lawsuit because the affidavits of Plaintiff's immediate supervisors, Defendant Greeley and Mr. Levy, state they were not aware of Plaintiff's Young I lawsuit. (Doc. 49-1, ¶ 5; Doc. 49-2, ¶ 5). However, Plaintiff's Amended Complaint states he was informed the decision to reorganize the Property Unit, and divest Plaintiff of his supervisory responsibilities, was the decision of the MPD Chief of Police (Doc. 15, ¶ 33), who would be the decision maker for purposes of this analysis and whose knowledge that Plaintiff engaged in protected conduct would be relevant to the Court's inquiry. The City Defendants have not submitted evidence that the MPD Chief of Police did not have knowledge that Plaintiff engaged in protected conduct, and therefore, their argument fails. Therefore, Plaintiff has established the third element of his prima facie case, and the burden shifts to the City Defendants to rebut the presumption that the adverse action was intended as retaliation by articulating a legitimate non-discriminatory reason for the adverse action.

Defendant Greeley states in his affidavit that, while he was Plaintiff's direct supervisor, Plaintiff's position as Building Maintenance Supervisor did not change, his official duties were not modified but would vary based on the needs of the department, and the community service detail was moved to a different department from the Property Unit. (Doc. 49-1, ¶ 4). Likewise, Mr. Levy states in his affidavit that, while he was Plaintiff's direct supervisor, Plaintiff's position as Building Maintenance Supervisor did not change, his official duties were neither modified nor

reassigned but would vary based on the needs of the department, and Mr. Levy would perform some of Plaintiff's duties when Plaintiff failed to do them. (Doc. 49-2, ¶ 4). Based on the affidavits of Defendant Greeley and Mr. Levy, the Court finds the City Defendants properly rebutted the presumption of retaliation. Therefore, Plaintiff must demonstrate the City Defendants' proffered reasons were merely a pretext to mask discriminatory actions.

While Plaintiff argues his title of "Building Maintenance Supervisor" was destroyed when his supervisory responsibilities were removed (Doc. 61, at 10), he has not shown how the City Defendants' reasons were merely a pretext beyond his conclusory statements that the adverse action was discriminatory. Accordingly, Plaintiff's Title VII and § 1981 claims fail under the *McDonnell Douglas* analysis.

### 4. (Count 6) Violation of Due Process Pursuant to the Constitution of Alabama of 1901

Similar to Plaintiff's claim in Count 1 that his due process rights pursuant to the Fourteenth Amendment were violated when his supervisory duties were removed by the City Defendants, Plaintiff claims in Count 6 his due process rights pursuant to the Constitution of Alabama of 1901 were violated by the City Defendants as a result of the same events. (*Compare* Doc. 15., ¶¶ 56-60 *with* Doc. 15, ¶¶ 79-81). The Alabama Supreme Court "has consistently interpreted the due process guaranteed under the Alabama Constitution to be coextensive with the due process guaranteed under the United States Constitution." *Vista Land & Equip., L.L.C. v. Comput. Programs & Sys., Inc.*, 953 So. 2d 1170, 1174 (Ala. 2006). In light of the Alabama Supreme Court's interpretation of the due process guaranteed under the Alabama Constitution, and since this Court found Plaintiff did not have a property interest in his job duties under the Court's Fourteenth Amendment due process analysis, *supra* at 10-13, the Court also finds Plaintiff did not have a property interest in his job duties under the due process clause found in the Alabama Constitution. Therefore, Plaintiff's claim that his due process rights pursuant to the Alabama

Constitutions were violated fails.

### 5.    (Count 7) Breach of Contract

In Plaintiff's Count 7, he claims the City breached its contract with him when it removed his supervisory duties. (Doc. 15, ¶ 83). The City Defendants argue Plaintiff's claim fails because Plaintiff cannot show there was a contract that guaranteed him specific job duties in his position as Building Maintenance Supervisor. (Doc. 49, at 13). Under Alabama law, a plaintiff can establish a breach-of-contract claim by showing "(1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages." *S. Med. Health Sys., Inc. v. Vaughn*, 669 So. 2d 98, 99 (Ala. 1995) (citations omitted). The City Defendants cite to Rule 4.2 of the MCPB Rules for the proposition that he was not guaranteed specific job duties. (Doc. 49, at 13). The Court agrees with the City Defendants' argument that Plaintiff cannot show a contract that guaranteed him specific job duties nor that his job duties were guaranteed.

Additionally, the City Defendants argue, insofar as Plaintiff claims his contract guaranteed him a procedural hearing if he was demoted, Plaintiff was not demoted as defined by Rule 14.10 of the MCPB Rules, which describes a demotion as a lower-grade position. RULES AND REGULATIONS OF THE PERSONNEL BOARD FOR MOBILE COUNTY, ALABAMA, Rule 14.10 (2006). According to Plaintiff's supervisors, he maintained his position as Building Maintenance Supervisor. (Doc. 49-1, ¶ 4; Doc. 49-2, ¶ 4). Therefore, Plaintiff's breach of contract claim fails.

### 6.    (Count 8) Negligence

In Plaintiff's Count 8, he claims the City was negligent pursuant to title 11, chapter 47, section 190 of the Code of Alabama, 1975, for the neglect, carelessness, or unskillfulness of the City's agents, the police officers. (Doc. 15, ¶ 85). Section 190 states:

> No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered

through the neglect, carelessness, or unskillfulness of some agent, officer, or employee of the municipality engaged in work therefor and while acting in the line of his or her duty . . . .

ALA. CODE § 11-47-190. Since the Court determined Plaintiff has not made out a cognizable claim against any of the individual City Defendants, Plaintiff's negligence claim fails.

For the foregoing reasons, the City Defendants' Motion for Summary Judgment is **GRANTED**.

## V. CONCLUSION

Pursuant to the foregoing Memorandum Opinion, it is hereby **ORDERED**:

1.      Plaintiff's Motions for Leave to File Affidavits (Doc. 60 & 62) are **GRANTED**;

2.      The City Defendants' Motion to Strike (Doc. 66) is **GRANTED** as to the statements in paragraphs 1, 2, and 3, and **DENIED** as to the statements in paragraphs 4 and 5; and

3.      The City Defendants' Motion for Summary Judgment (Doc. 49) is **GRANTED**, and an appropriate judgment will be entered pursuant to Fed. R. Civ. P. 58.

**DONE** and **ORDERED** this the 27th day of February 2019.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE